IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL L. BALSAM,<br><br>  Plaintiff,<br><br>v.<br><br>TUCOWS INC., ET AL.,<br><br>  Defendant. | No. CV 09-03585 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Daniel L. Balsam ("Plaintiff" or "Balsam") brings this suit against Tucows Inc., Tucows Corp. (together, "Tucows"), and individuals Elliot Noss and Paul Karkas (collectively, "Defendants") seeking declaratory judgment and damages for breach of contract, negligence, and civil conspiracy. Now pending before the Court is Defendants' motion to dismiss. All of Plaintiff's claims are based on his status as a third party beneficiary. Because Plaintiff cannot prove that he is a third party beneficiary, Plaintiff's claims fail as a matter of law. Therefore, Defendants' motion is GRANTED.

**BACKGROUND**

The registration of Internet domain names is administered by the Internet Corporation for Assigned Names and Numbers ("ICANN"), a private, non-profit corporation. See Solid Host, NL v. NameCheap, Inc., No. 08-5414, 2009 WL 2225726, at *1 (C.D. Cal. May 19, 2009). ICANN maintains a publicly-accessible database of information concerning all domain names, known as the "Whois" database. Id. To register a domain name, a

"registrant" must contact a "registrar," who sends the requested domain name to ICANN, including identifying information to be included in the Whois database. Id. ICANN requires all registrars to sign the Registrar Accreditation Agreement ("RAA") with ICANN. Id. Defendant Tucows is such a "registrar of domain names, accredited to sell domain name registrations by" ICANN and is a party to the ICANN RAA. Mot. at 2-3.

Between October 2005 and May 2006, Plaintiff, an individual, received 1,125 unsolicited e-mail messages ("spam") advertising the website "adultactioncam.com." Compl. ¶ 29. In October 2005, Plaintiff performed a query on the ICANN Whois database for the domain name "adultactioncam.com," and learned that the registrant was Angeles Technology Inc. ("Angeles") and the registrar was Defendant Tucows. Id. ¶ 31. Subsequently, Angeles opted into Tucows' privacy service, which removes the registrant's name and address from the Whois database. Mot. at 3. Thereafter, the Whois database indicated that the registered name holder for "adultactioncam.com" was Tucows itself, doing business as "contactprivacy.com." Id. ¶ 39.

On May 23, 2006, Plaintiff filed suit against Angeles, among others, alleging the violation of a California law restricting unsolicited commercial e-mail.[1] Compl. Ex. F, Judgment in the Matter of Balsam v. Angeles Technology Inc. et al. ("Angeles Case") at 1. On October 17, 2007, while the Angeles case was still pending, Plaintiff, having learned that the registrant of "adultactioncam.com" was availing itself of Tucows' privacy service, wrote to Tucows seeking the identity of the owner of the "adultactioncam.com" domain name. Compl. ¶¶ 40-43. In his letter, Plaintiff cited section 3.7.7.3 of the RAA, which provides in pertinent part as follows:

> A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

---

[1] That action was filed in Santa Clara Superior Court, but was subsequently removed to the Northern District of California. See Compl. Ex. F.

2

Id. ¶ 43. Tucows refused to provide the identity of the licensee of "adultactioncam.com" without a court order. Id. ¶¶ 49-51.

On March 28, 2008, the district court in the Angeles case granted Plaintiff's application for default judgment in the amount of $1,125,000. Compl. Ex. F at 2-3. Plaintiff, attempting to collect on the judgment, sought to levy revenue from the website's payment processor. Compl. ¶¶ 59-60. The payment processor informed Plaintiff that the site revenues had been assigned to Belvedere St. James Ltd. ("Belvedere"). Id. ¶¶ 59-60. Plaintiff brought unsuccessful motions to seize the domain name "adultactioncam.com" and to enforce the judgment against the revenues assigned to Belvedere. Id. ¶¶ 62-64.

Unable to collect from Angeles or Belvedere, Plaintiff filed this suit against Defendants, including Tucows, its Chief Executive Officer, Elliot Noss, and compliance officer, Paul Karkas, in state court on June 26, 2009. Id. ¶ 2. Plaintiff alleges that "TUCOWS' refusal to provide the identity of its Licensee – the operator of the AdultActionCam.com domain name and website – resulted in confusion for the court [in the Angeles case] that has so far allowed the tortfeasors to escape liability." Id. ¶ 69. Plaintiff seeks an order holding Defendants liable for the full amount of the judgment in the Angeles case, $1,125,000. Id. at 15.

On August 5, 2009, Defendants removed the case to this Court on diversity grounds. On August 12, 2009, Defendants filed the instant motion to dismiss, asserting that Plaintiff's action "rest[s] on the facially false premise that he is an intended third party beneficiary of a contract to which he is not a party, which does not mention Balsam by name or class, and which contains an express 'No Third-Party Beneficiaries' clause." Mot. at 1. Defendants also filed a request that the Court take judicial notice of the RAA in its entirety and an amicus brief filed by ICANN in a separate matter. Defs. Req. J. Notice ("RJN") at 1. The Court takes judicial notice of the RAA, but does not take judicial notice of the ICANN brief.[2]

---

[2] Because Plaintiff relies on the RAA, refers to the agreement in his complaint, and does not dispute the authenticity of the copy submitted by Defendants, the Court takes judicial notice of the agreement. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). The Court does not take judicial notice of the ICANN brief and need not rely on this document in arriving at its decision.

3

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-2000 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). According to the Supreme Court, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949-50. In determining facial plausibility, mere conclusions of law are not entitled to the assumption of truth. Id. Additionally, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

**DISCUSSION**

Plaintiff asserts four causes of action: (1) breach of contract; (2) negligence, (3) civil conspiracy; and (4) declaratory relief. Compl. ¶¶ 82-114. The Court will address each in turn.

**I.  Breach of Contract**

Plaintiff alleges that Defendants breached the terms of the RAA, which he claims provides that "a Registered Name Holder (here, TUCOWS) who chooses to offer private domain name registration services must disclose the identity of its Licensee operating the domain name to anyone who presents the Registered Name Holder with reasonable evidence of actionable harm; otherwise, the Registered Name Holder shall accept all liability for harm caused by the wrongful use of the domain name." Compl. ¶ 84 (emphasis in original). Plaintiff, though not a party to the RAA, claims that he can enforce the RAA because he is

4

"one of the intended third party beneficiaries of paragraph 3.7.7.3 of the ICANN agreement." Id. ¶ 85.

### A. Plaintiff's Third Party Beneficiary Status

Under California law, a third party may enforce a contract if the contract is "made expressly for the benefit of a third person. . . ." Cal. Civ. Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." Karo v. San Diego Symphony Orchestra Ass'n, 762 F.2d 819, 821-22 (9th Cir. 1985) (citing Strauss v. Summerhays, 157 Cal. App. 3d 806, 816 (1984)). A third party "need not be named or identified individually to be an express beneficiary[.]" Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co. 173 Cal.App.3d 1050, 1055 (1985). A third party seeking to enforce a contract may demonstrate the parties' intent to confer a benefit by showing "that he is a member of a class of persons for whose benefit it was made." Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1023 (2009) (quoting Garratt v. Baker, 5 Cal. 2d 745, 748 (1936). "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." Spinks, 171 Cal. App. 4th at 1022 (quoting Johnson v. Holmes Tuttle Lincoln-Merc., 160 Cal. App. 2d 290, 297 (1958)). "Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." Landale-Cameron Court, Inc. v. Ahonen, 155 Cal. App. 4th 1401, 1411 (2007) (quotation and citation omitted).

Defendants contend that Plaintiff is not a third party beneficiary given that "the RAA specifically disclaims any intention to benefit third-parties . . . ." Mot. at 5. Specifically, as Defendants note, Section 5.10 of the RAA provides: "No Third-Party Beneficiaries. This Agreement shall not be construed to create any obligation by either ICANN or Registrar to any non-party to this Agreement, including any Registered Name Holder." RJN Ex. 1 at 21.

5

Plaintiff advances two arguments in support of his contention that, despite the "No Third Party Beneficiaries" clause, he is a third party beneficiary of the RAA. First, Plaintiff claims that section 3.7.7.3 of the RAA is indicative of the parties' intent to benefit third parties, and thus trumps the "No Third Party Beneficiaries" clause. Second, Plaintiff claims that the "No Third Party Beneficiaries" clause does not foreclose third party claims against Defendant Tucows when Tucows acts as a registered name holder, as opposed to a registrar. Both of these arguments fail.

### 1. The Relationship Between the "No Third Party Beneficiaries" Clause and Section 3.7.7.3

Plaintiff claims that, despite the RAA's "<u>general</u> 'no third party beneficiaries' catch-all clause," section 3.7.7.3 nevertheless controls because "specific contractual provisions control over general contractual provisions." Opp. at 5 (citing Cal Civ. Code § 3534, which provides, "Particular expressions qualify those which are general.") (emphasis in original).

#### a. Cases Cited by Plaintiff

Plaintiff relies on two cases to support the proposition that a third party may enforce a contract notwithstanding a "No Third Party Beneficiaries" clause.

Plaintiff first cites <u>Prouty v. Gores Technology Group</u>. 121 Cal. App. 4th 1225 (2004). In <u>Prouty</u>, "[a] new parent company terminated plaintiff employees upon its purchasing their employer." <u>Id.</u> at 1227. The plaintiff employees sued, claiming that their discharge was a violation of the purchase agreement, which included an amendment granting certain protections to employees of the acquired company. <u>Id.</u> The California Court of Appeal held that, despite "the express language . . . of the agreement . . . preclud[ing] plaintiffs from being third party beneficiaries[,]" "the parties expressly intended to grant plaintiffs the promises contained in . . . the amendment." <u>Id.</u> at 1232, 1234. The court noted that the provision protecting the employees was added as an amendment by the seller, with the understanding that it was "'not prepared' to negotiate the [additional] terms. . . ." <u>Id.</u> at 1234. The court further noted that "when a general and a particular provision are

6

inconsistent, the particular and specific provision is paramount to the general provision." Id. at 1235. The court concluded that "the amendment thus is an exception to . . . the original contract . . . and the plaintiffs can enforce it." Id.

Prouty is distinguishable from the case at bar. First, in Prouty, the "specific" clause that the third parties sought to enforce was an amendment to an agreement. See 121 Cal. App. 4th at 1228. That the amendment was added after the general no third party beneficiary statement was included in the agreement was strong evidence of the parties' intent to modify the original terms of the agreement. See id. at 1234 ("If [the parties] had not wanted to benefit plaintiffs, they would not have written section 6 [of the amendment]."). Here, there is no evidence that section 3.7.7.3 of the RAA was intended to amend any other part of the agreement. Secondly, the clause protecting the employees in Prouty was aimed at protecting a narrow, specifically-identified class of people, namely employees of one party's subsidiary. Id. at 1127-28 (clause at issue refers to "U.S. VeriFone Employees"). Here, the RAA is a form agreement that refers generally to "a party." RJN Ex. 1 at 11. This distinction is important because one way a party may prove third party beneficiary status is by showing membership in a "class of persons for whose benefit [the relevant provision] was made." Spinks, 171 Cal. App. 4th at 1023.

Plaintiff next cites Milmoe v. Gevity HR, Inc., No. 06-04721 SBA, 2006 WL 2691393 (N.D. Cal. Sept. 20, 2006), a case factually similar to Prouty. In Milmoe, the contract at issue was a personal service contract between the plaintiff's employer and a second company, under which the second company would become the plaintiff's "co-employer." 2006 WL 2691393 at *1. In that unpublished case, the court denied the defendant's motion to dismiss, finding that "it is at least plausible that the Plaintiff might prove a) that certain provisions of the [agreement]-such as the provision pertaining to payment of wages-were intended to benefit Plaintiff and b) that these provisions thus give rise to Plaintiff's third party breach of contract claim against Gevity, in spite of the [agreement's] language that it 'does not create any rights in a third party.'" Id. at *4. Milmoe is also distinguishable from the present case. In Milmoe, the plaintiff's work and wages were the subject of the contract,

1 thus making it entirely plausible that parts of the contract were intended for the express

2 benefit of the plaintiff. Id. Here, in contrast, it does not appear that the contract at issue even

3 refers to Plaintiff.

4 While it is of course possible for parties to intend to benefit third parties despite

5 contractual language disclaiming third party beneficiaries, the parties to the ICANN RAA

6 evidenced no such intent.

b. The "Specific" Clause Relied on by Plaintiff

8 Moreover, Plaintiff's claim that the "specific" clause of section 3.7.7.3 "trumps" the

9 RAA's "general" disclaimer of third party beneficiaries fails because section 3.7.7.3 does not

10 bind the parties to the Tucows-ICANN agreement.

11 Plaintiff, in interpreting the RAA, fails to read section 3.7.7 in conjunction with

12 section 3.7.7.3, resulting in the loss of important context. Section 3.7.7.3, the clause on

13 which Plaintiff relies, must be read together with section 3.7.7 as follows:

> 3.7.7 Registrar shall require all Registered Name Holders to enter into an electronic or paper registration agreement with Registrar including at least the following provisions:
>
> . . .
>
> 3.7.7.3 Any Registered Name Holder that intends to license use of a domain name to a third party is nonetheless responsible for providing its own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

23 RJN Ex. 1 at 11-12.

24 As defined in the RAA, the word "Registrar" "refers to [Registrar Name], a party to

25 this Agreement." Id. at 3. "Registrar" refers to parties entering into an agreement with

26 ICANN, like Defendant Tucows. The term "Registered Name Holder" refers to "the holder

27 of a Registered Name." Id. Accordingly, the ICANN RAA, specifically section 3.7.7,

28 requires the Registrar, Tucows, to enter into agreements with Registered Name Holders that

8

include the provision in section 3.7.7.3. Section 3.7.7.3 does not by itself bind ICANN or Tucows.[3]

In a recent and factually similar case, a federal district court in California interpreted the very contractual provisions at issue here, finding that the language of the RAA "unambiguously manifests the parties' intents not to benefit third parties." Solid Host, NL, 2009 WL 2225726 at *21. In Solid Host, the plaintiff filed an action against defendant NameCheap and a Doe defendant, whom it accused of hijacking its domain name. Id. at *1. Through a security breach at another registrar, the Doe defendant was able to "steal" the plaintiff's domain name and subsequently entered into a contract with NameCheap whereby NameCheap would become the registrant for the domain name. Id. at *3. NameCheap refused the plaintiff's requests to return the domain name to the plaintiff's control, choosing not to become involved "in what it perceived to be a dispute between Solid Host and Doe, and refused to reveal Doe's identity." Id. at *3-4. The plaintiff filed suit against the Doe defendant and NameCheap, alleging, among other claims, breach of contract as a third party beneficiary. Id. NameCheap had entered into a registrar accreditation agreement with ICANN that was similar, if not identical, to the agreement at issue in this case. Id. at *21. Considering section 3.7.7 of the RAA, the court noted that "paragraph 3.7.7.3 is not itself a term of the ICANN agreement; the agreement merely required that NameCheap include such a provision in future contracts between it and parties to whom it registered domain names." Id. The court, citing the "No Third Party Beneficiaries" clause of the RAA and section 3.7.7, held that the plaintiff had "failed to state a claim for breach of the agreement between ICANN and NameCheap." Id.

The Court concurs with the analysis in Solid Host, and finds that the obligations set forth in section 3.7.7.3 do not bind Tucows and ICANN. Rather, they are obligations that, per the RAA, Tucows must include in a separate and subsequent agreement between Tucows and a Registered Name Holder. As section 3.7.7.3 is not truly a clause of Tucows'

---

[3] Plaintiff's suit is not based on the claim that Tucows either did not enter into such a agreement or that the agreement did not include the provision in section 3.7.7.3 of the RAA.

9

agreement with ICANN, Plaintiff's claim that this clause "trumps" the contract's general disclaimer of third party beneficiaries must fail.

### 2. Tucows as Registered Name Holder

Plaintiff further claims that the "No Third Party Beneficiaries" clause applies to the agreement between ICANN and Defendant Tucows <u>as a registrar</u>, but does not apply to any actions Tucows takes <u>as a registered name holder</u>. Plaintiff advanced this argument for the first time at the motion hearing on October 16, 2009.

Plaintiff asserted at the motion hearing that Defendant Tucows "wears many hats." In Tucows's primary role as registrar, it contracts with ICANN and licenses domain names to registrants. See Mot. at 2-3. As part of its business as a registrar, "[a]s a service, Tucows allows its domain name registration customers to use a privacy service that removes their names and addresses from the public database of the world's domain names (also known as the 'whois' database)." Mot. at 3. Plaintiff claims that "when domain names are privately registered, as is the case here, the registrar/privacy service (i.e., Tucows) <u>becomes</u> the Registered Name Holder." Opp. at 8 (emphasis in original).

Plaintiff claims that, while the "No Third Party Beneficiaries" clause of the RAA might protect Tucows from suit by third parties <u>as a registrar</u>, Tucows may nonetheless be sued <u>as a registered name holder</u> pursuant to the RAA. Plaintiff asserted at the motion hearing that section 3.7.7.3 provides third parties with the right to sue registered name holders for breach of the RAA. This argument is without merit.

First, Plaintiff has provided no evidence to support the notion that Tucows as registered name holder is bound by the terms of the RAA. To the contrary, the very first sentence of the RAA states that "[t]his REGISTRAR ACCREDITATION AGREEMENT ("Agreement") is by and between the Internet Corporation for Assigned Names and Numbers . . . and [Registrar Name], a [Organization type and jurisdiction] ("Registrar"), . . ." RJN Ex. 1 at 2. Notwithstanding that Tucows may wear many "hats," Tucows is a signatory to the RAA in its capacity as registrar. The RAA, the only contract upon which Plaintiff relies, is between two parties: ICANN and the registrar, Tucows.

1    Secondly, even assuming that the "No Third Party Beneficiaries" clause applies to
2 Tucows as registrar but not to Tucows as registered name holder, Plaintiff's claim still fails.
3 Plaintiff's suit, whether against Tucows as a registrar or as a registered name holder, is still
4 based on an alleged violation of section 3.7.7.3 of the RAA. As discussed above, section
5 3.7.7.3 is not truly a term of the RAA that binds either of the two parties to the RAA.

6    B.   Conclusion as to Breach of Contract Claim

7    The Court finds that Plaintiff has not presented evidence showing the intent of the
8 parties to expressly benefit Plaintiff or any other third party through the RAA. Thus, the
9 Court holds that the "No Third Party Beneficiaries" clause of the RAA is controlling and
10 Plaintiff's breach of contract claim fails as a matter of law.

11 **II.   Impact of Third Party Beneficiary Status to Plaintiff's Remaining Claims**

12   In the motion hearing, Plaintiff conceded that all of his claims are contingent on his
13 ability to enforce the RAA as a third party beneficiary. Having found that Plaintiff is not a
14 third party beneficiary of the RAA, the Court will address Plaintiff's remaining claims.

15   A.   Negligence

16   Plaintiff alleges negligence on the part of Defendants. Compl. ¶¶ 94-105. To prevail
17 in a negligence claim, a plaintiff must show "a legal duty . . . , a breach of such legal duty,
18 and the breach as the proximate or legal cause of the resulting injury." United States Liab.
19 Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 594 (1970).

20   Plaintiff alleges that "Defendants had a duty to BALSAM[] . . . [by virtue of having]
21 voluntarily accepted by signing the ICANN Agreement and choosing to offer private
22 registration services, through which TUCOWS became the Registered Name Holder of the
23 domain name AdultActionCam.com . . . ." Compl. ¶ 96. Specifically, Plaintiff claims that
24 Defendants had a duty under section 3.7.7.3 of the RAA "to either provide BALSAM with
25 the identity of its Licensee operating AdultActionCam.com, or to accept liability for all harm
26 suffered by BALSAM arising from the wrongful use of AdultActionCam.com." Id.

27   As discussed above, section 3.7.7.3, upon which Plaintiff's claim of Defendants' duty
28 is based, does not create a benefit or duty to third parties. Furthermore, the "No Third Party

11

1 Beneficiaries" clause of the RAA specifically disclaims any duty to parties like Plaintiff.
2 Because Plaintiff cannot show that Defendants owed him a duty, he cannot prove breach of
3 that duty. See Haidinger-Hayes, Inc., 1 Cal. 3d at 594. Therefore, Plaintiff's negligence
4 claim fails as a matter of law.

### B. Civil Conspiracy

Plaintiff next "alleges that TUCOWS INC., TUCOWS CORP., NOSS, and KARKAS, acting in agreement, concert, and conspiracy with each other, jointly and severally, as set forth fully above, acted with a common purpose to refuse to provide BALSAM with the identity of TUCOWS' Licensee who privately registered the domain name AdultActionCam.com (for which TUCOWS is the Registered Name Holder) before judgment was entered in" the Angeles case. Compl. ¶ 107.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994). In order for a civil conspiracy to be actionable, an underlying tort must be committed. See id. at 511 ("Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort."). As Plaintiff cannot demonstrate an underlying tort, his conspiracy claim fails as a matter of law.

### C. Declaratory Judgment

Finally, Plaintiff asks the Court "to make a judicial declaration and determination that, pursuant to the ICANN Agreement, because Defendants refused to provide BALSAM with the identity of TUCOWS' Licensee . . . Defendants shall accept all liability for harm caused by wrongful use of the domain name." Compl. ¶ 114.

California Code of Civil Procedure section 1060 provides that "[a]ny person interested under a written instrument, . . . or under a contract, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties

. . . arising under the instrument or contract." Cal. Code Civ. Proc. § 1060. Here, Plaintiff is not a party to the RAA. Nor is he a third party beneficiary of the contract, as explained above. Because Plaintiff has neither rights nor duties under the RAA, he is not entitled to a declaratory judgment.

### CONCLUSION

Based on the foregoing, the Court hereby GRANTS Defendants' Motion to Dismiss, with prejudice.

**IT IS SO ORDERED.**

Dated: October 23, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE